Keely E. Duke
ISB # 6044; ked@dukescanlan.com
Kevin A. Griffiths
ISB # 8187, kag@dukescanlan.com
DUKE SCANLAN & HALL, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, Idaho  83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

Attorneys for Plaintiff
V:\Client Files\8\8-009\Pleadings\Complaint 01.docx


# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., a Connecticut corporation, | |
| Plaintiff, | Case No._____ |
| v. | COMPLAINT AND DEMAND FOR JURY TRIAL |
| MADISON WOMEN'S CLINIC PLLC, an Idaho limited liability company; and INSURE IT ALL LLC dba ISU – INSURE IT ALL LLC, an Idaho limited liability company, | |
| Defendants. | |

COMES NOW Plaintiff Sentinel Insurance Company, Ltd. ("Sentinel"), through its

counsel of record, Duke Scanlan & Hall, PLLC, and by way of Complaint against Defendants,

states as follows:

**COMPLAINT AND DEMAND FOR JURY TRIAL – 1**

# I.
# PARTIES

1.      Sentinel is a Connecticut corporation, duly authorized to do business in the State of Idaho by the Idaho Department of Insurance.

2.      Madison Women's Clinic, PLLC ("Women's Clinic") is a limited liability company organized under the laws of the State of Idaho with its principal place of business in Madison County, Idaho.

3.      Insure It All LLC dba ISU – Insure It All LLC ("Insure It All") is a limited liability company organized under the laws of the State of Idaho with its principal place of business in Bonneville County, Idaho.

# II.
# JURISDICTION AND VENUE

4.      This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202, and Federal Rule of Civil Procedure 57.  This action has been brought for the purpose of determining a question of actual controversy between the parties as more fully set forth herein.

5.      Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Women's Clinic's and Insure It All's principal places of business are or were in this district, the events giving rise to this action occurred in this district, and the Sentinel insurance policies at issue were delivered to Women's Clinic in this district.

7.      An actionable justiciable controversy exists between Sentinel and Defendants, involving the rights and liabilities under certain policies of insurance issued by Sentinel to

**COMPLAINT AND DEMAND FOR JURY TRIAL – 2**

Women's Clinic, dependent on the construction of said policies of insurance, which controversy may be determined by judgment of this Court without other lawsuits.

## III.
## FACTUAL ALLEGATIONS

### Nilene Weekes' Termination and the Underlying Action[1]

8.     Women's Clinic employed Nilene Weekes from June 1997 through April 27, 2012.

9.     Ms. Weekes performed full-time secretarial work for Women's Clinic from December 2009 through April 27, 2012.

10.     On January 9, 2010, Ms. Weekes was hospitalized with paralysis from the neck down and diagnosed with Guillain-Barre Syndrome.

11.     Ms. Weekes remained in the hospital until February 4, 2010, after which time she returned to work for Women's Clinic.

12.     While Ms. Weekes was in the hospital, she was contacted by Women's Clinic and offered an assistant office manager position, which Ms. Weekes accepted.

13.     In April 2010, Women's Clinic hired Sheri Jenson to fill the position of assistant office manager because it did not feel that Ms. Weekes could fulfill the duties of the position because of her limited use of her hands.

14.     On April 26, 2010, Women's Clinic reduced Ms. Weekes' pay from $19.50 per hour to $15.50 per hour and reduced Ms. Weekes' hours from 40 hours per week to 18 hours per week.

---

[1]     The allegations of this section are made upon Sentinel's information and belief on the basis of the allegations of the Complaint and Demand for Jury Trial in U.S. District Court for the District of Idaho Case No. 4:12-cv-00497-BLW captioned Weekes v. Madison Women's Clinic, PLLC, and portions of Ms. Weekes' personnel file provided to Sentinel by Women's Clinic.

**COMPLAINT AND DEMAND FOR JURY TRIAL – 3**

15.     Women's Clinic was in contact with its attorney concerning the proper manner in which to provide accommodation for Ms. Weekes' as early as May 2010.

16.     Ms. Weekes resumed full-time employment in June 2010.

17.     Women's Clinic experienced problems with Ms. Weekes, including insubordination, throughout 2011.

18.     On April 5, 2012, Ms. Weekes' regular job duties were assigned to another employee.

19.     On April 17, 2012, Ms. Weekes was tasked with preauthorizing surgeries.

20.     Ms. Weekes' April 2012 assignment allegedly caused her difficulty because it required writing and talking on the phone at the same time, which was difficult for her because of limited use of her hands.

21.     On April 20, 2012, Ms. Weekes requested a disability accommodation.

22.     On April 22, 2012, Women's Clinic accommodated Ms. Weekes by setting up templates for surgical preauthorization, which worked well for Ms. Weekes.

23.     On April 27, 2012, Ms. Weekes' employment with Women's Clinic was terminated.

24.     On August 16, 2012, Ms. Weekes filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), a true and correct copy of which is attached hereto as **Exhibit A**.

25.     A Notice of Charge of Discrimination from the EEOC, a true and correct copy of which is attached hereto as **Exhibit B**, was sent to Women's Clinic on or about August 24, 2012.

26.     On September 7, 2012, Ms. Weekes received a Notice of Right to Sue from the EEOC, a true and correct copy of which is attached hereto as **Exhibit C**.

27.     The Notice of Right to Sue was sent to Women's Clinic on or about September 7, 2012.

28.     On September 25, 2012, Ms. Weekes received a Notice of Administrative Dismissal and Right to Sue from the IHRC based on the administrative closure of Ms. Weekes' EEOC claim, a true and correct copy of which is attached hereto as **Exhibit D**.

29.     The Notice of Administrative Dismissal and Right to Sue was sent to Women's Clinic on or about September 25, 2012.

30.     On September 25, 2012, Ms. Weekes filed a Complaint and Demand for Jury Trial in the Federal District Court for the District of Idaho, Case No. 4:12-cv-00497-BLW captioned Weekes v. Madison Women's Clinic, PLLC ("Underlying Action").

31.     In the Underlying Action, Ms. Weekes asserted claims against Women's Clinic for discrimination in employment on the basis of a disability and her age in violation of Title I of the Civil Rights Act, Title I of the Americans with Disabilities Act, and the Age Discrimination in Employment Act.

32.     Ms. Weekes alleged that Women's Clinic "discriminated against her in the terms and conditions of her employment by failing to promote her because of her disability, cutting of her pay because of her disability, promoting others over her because of her age, and firing her for her disability and age."

## The Sentinel Policy

33.     Sentinel issued a Spectrum Policy, Policy No. 34 SBA PM0547 SC, with a policy period from April 1, 2012, through April 1, 2013, ("Policy").

**COMPLAINT AND DEMAND FOR JURY TRIAL – 5**

34.    The Policy contained Employment Practice Liability Insurance ("EPLI") Coverage with coverage limits of $10,000 per covered claim.

## The EPLI Coverage Increase

35.    During a meeting of Women's Clinic doctors and staff on March 28, 2012, the doctors authorized Jacquelyn Hanson, its practice administrator, to seek an increase in EPLI coverage through Jeremy Jones of Insure It All, based on a quote that Mr. Jones previously provided. A true and correct copy of the minutes of that meeting are attached hereto as **Exhibit E.**

36.    Mr. Jones submitted an application requesting price quotes for an increase in Women's Clinic's EPLI coverage to Sentinel's Lisa Michelle Ramirez-Dimas via email on May 2, 2012. A true and correct copy of the email and attached application are attached hereto as **Exhibit F**.

37.    The application, signed by Tyler Swendiman of Insure It All and Ms. Hanson was dated April 24, 2012. It requested quotes for $250,000 and $500,000 in EPLI coverage retroactive to April 20, 2012.

38.    Women's Clinic answered "No" to Question 6 of the coverage application, which provides as follows:

> Is any person proposed for coverage aware of any fact or circumstance or any actual or alleged act, error or omission which might give rise to a claim that would fall within the scope of the proposed coverage?

39.    After the application requesting the quote was submitted, Insure It All did not request that any EPLI coverage increase to the Policy be processed prior to October 1, 2012.

40.     On October 1, 2012, after the complaint in the Underlying Action was served on Women's Clinic, Mr. Jones contacted Sentinel and requested that the EPLI coverage increase for the Policy be processed.

41.     On October 4, 2012, after the complaint in the Underlying Action had been served on Women's Clinic, Mr. Jones again contacted Sentinel and represented that the EPLI coverage should have actually been increased to $500,000.

42.     Neither Insure It All nor Women's Clinic mentioned the EEOC Notice of Right to Sue or the IHRC Notice of Administrative Dismissal and Right to Sue when seeking the EPLI coverage increase from Sentinel in October 2012.

43.     As a result of Mr. Jones' request, Sentinel requested a "no-loss letter" from Women's Clinic, confirming that no one at the Women's Clinic was aware of any facts or circumstances that could give rise to a claim under the EPLI coverage.

44.     Women's Clinic submitted a "no-loss letter" to Sentinel dated October 4, 2012, signed by Ms. Hanson, representing that the Women's Clinic "had no liability losses or claims since April 1, 2012, nor in dates prior to this." A true and correct copy of the letter is attached hereto as **Exhibit G**.

45.     The "no-loss letter" was materially false and fraudulent.

46.     In reliance on the representations of Insure It All and Women's Clinic, Sentinel increased Women's Clinic's EPLI Coverage to $500,000 retroactive to April 20, 2012.

47.     On October 11, 2012, Women's Clinic tendered the Complaint in the Underlying Action to its insurance agent, Insure It All, along with a narrative description of difficulties Women's Clinic faced in accommodating Ms. Weekes after her diagnosis with Guillain-Barre Syndrome. A true and correct copy of the tender materials is attached hereto as **Exhibit H**.

**COMPLAINT AND DEMAND FOR JURY TRIAL – 7**

48.     Insure It All tendered the information in **Exhibit H** to Sentinel on October 12, 2012.

49.     Mr. Jones was acting as the agent of Women's Clinic in the course of his communications with Sentinel concerning the Policy.

50.     Insure It All was acting as the agent of Women's Clinic in the course of its communications with Sentinel concerning the Policy.

51.     Insure It All tendered the complaint in the Underlying Action to Sentinel on October 12, 2012.

52.     Women's Clinic's agents, Mr. Jones and Insure It All, requested that $250,000 and $500,000 EPLI coverage increases be processed after Women's Clinic informed them that it had been served with the complaint in the Underlying Action. Mr. Jones and Insure It All did not disclose the facts and circumstances of the Underlying Action or service of the complaint on Women's Clinic to Sentinel.

53.     On November 6, 2012, Ms. Hanson sent a letter to Sentinel, retracting her statements in the October 4, 2012, "no-loss letter," instead informing Sentinel that Women's Clinic had in fact been served with the Complaint in the Underlying Action on September 27, 2012. A true and correct copy of that letter is attached hereto as **Exhibit I**.

54.     During an investigation by Sentinel, Ms. Hanson admitted that she was aware of problems with Ms. Weekes that could potentially lead to her termination prior to the effective date of the Policy, April 1, 2012, and prior to her signing the application for EPLI coverage increase on April 24, 2012.

55.    Upon information and belief, Women's Clinic was aware of facts or circumstances that could result in a claim against Women's Clinic falling under EPLI coverage of any policy issued to Women's Clinic on or before April 1, 2012.

56.    During an investigation by Sentinel, Mr. Jones admitted that he sought EPLI coverage increases of $250,000 and $500,000 in October 2012, after being informed that Women's Clinic had been served with the complaint in the Underlying Action, because he had forgotten to do so in May 2012 at Women's Clinic's request.

57.    Upon information and belief, Insure It All was aware of facts or circumstances that could result in a claim against Women's Clinic falling under the EPLI coverage of any policy issued to Women's Clinic on or before April 1, 2012 and at all times it requested increases in limits for the EPLI coverage.

58.    Women's Clinic's tender of the Underlying Action seeks coverage for claims that would fall under the EPLI coverage form of the Policy.

59.    Women's Clinic and its agents did not disclose the facts and circumstances of Ms. Weekes' disability accommodation or her termination to Sentinel.

### IV.
### CLAIMS

**COUNT I – DECLARATORY AND EQUITABLE RELIEF (28 U.S.C. §§ 2201-2202)**
**RESCISSION – IDAHO CODE § 41-1811 (WOMEN'S CLINIC)**

60.    The allegations of ¶¶ 1-59 are incorporated herein by reference as if set forth in full.

61.    The Policy contains the following condition:

**C.    Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any

time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Policy.

Form SS 00 05 10 08, p. 2.

62.     The EPLI coverage form of the Policy contains the following condition:

**A.     Application**

In granting coverage under this Coverage Part, we have relied on the representations in the "application." All such representations are the basis of coverage under this insurance.

By acceptance of this Coverage Part, the "insured" agrees that with respect to the statements in the "application" that:

(1)     The statements in the "application" are true and correct representations of the "insured," each shall be deemed material to the acceptance of the risk or the hazard assumed by us under this insurance, and this coverage form is issued in reliance upon the truth and accuracy of such representations;

(2)     In the event the "application" contains misrepresentations or fails to state facts which materially affect either the acceptance of the risk or the hazard assumed by us under this coverage form, this insurance in its entirety shall be void and of no effect whatsoever, and

(3)     This Coverage Part shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual insurance contracts with each "insured."

Form SS 09 01 10 08, p. 7.

63.     The EPLI coverage form of the Policy contains the following condition:

**E.**     This Coverage Part applies only if on or before the effective date of this coverage, the "insured" had no knowledge of

**COMPLAINT AND DEMAND FOR JURY TRIAL – 10**

any circumstances involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, which could reasonably be expected to result in a "claim" made against you, any "insured" or any subsidiary under this Coverage Part.

Form SS 09 01 10 08, pp. 1-2.

64.     The EPLI coverage from of the Policy contains the following condition:

**F.**         This Coverage Part applies only if the "claim" is for a "wrongful act" that did not occur before the "retroactive date" set forth in the Declarations, or after the end of the "policy period."

Form SS 09 01 10 08, pp. 1-2.

65.     Women's Clinic was aware of facts or circumstances that could give rise to a claim under the Policy prior to the effective date of the Policy.

66.     Women's Clinic was aware of facts or circumstances that could give rise to a claim under the Policy at the time it signed the application requesting an EPLI coverage increase.

67.     Despite Women's Clinic's knowledge of potential claims at the time of the application for EPLI coverage, the "no" box was checked in response to Question 6, asking about facts or circumstances that might give rise to a potential claim.

68.     Women's Clinic was aware of facts or circumstances that could give rise to a claim under the Policy at the time it signed the "no-loss letter."

69.     Women's Clinic was aware that Ms. Weekes had filed an IHRC Complaint, an EEOC Complaint, and the Underlying Action at the time it issued the "no-loss letter."

70.     Women's Clinic did not disclose to Sentinel the facts or circumstances of which it was aware that could give rise to a claim at any time prior to its tender of the Underlying Action.

71.     Pursuant to Idaho Code § 41-1811, "[m]isrepresentations, omissions, concealment of facts, and incorrect statements" can prevent recovery under an insurance policy if they are (1)

**COMPLAINT AND DEMAND FOR JURY TRIAL – 11**

material to the acceptance of the risk; (2) fraudulent; or (3) the insurer would not have issued the policy if it had knowledge of the omitted information.

72.     Women's Clinic's actions and omissions constitute intentional concealment and/or misrepresentation of material facts concerning a potential claim under the Policy.

73.     Sentinel would not have issued the EPLI coverage increase requested for the Policy if it had been made aware of the facts and circumstances surrounding Ms. Weekes' employment with Women's Clinic.

74.     Because Women's Clinic and its agents made material misrepresentations and concealed relevant facts concerning potential claims under the Policy, the Policy is void ab initio.

75.     Because the Policy is void ab initio, Sentinel is tendering all Policy premiums paid by Women's Clinic to this Court pursuant to 28 U.S.C. § 2041 pending the outcome of this action.

76.     Because the Policy is void ab initio, Sentinel is entitled to a declaration from this Court that the Policy is void ab initio and a judgment from this Court rescinding the Policy in its entirety.

**COUNT II – DECLARATORY RELIEF (28 U.S.C. §§ 2201-2202) (WOMEN'S CLINIC)**

77.     The allegations of ¶¶ 1-76 are incorporated herein by reference as if set forth in full.

78.     The insuring agreement of the EPLI coverage form of the Policy contains the following condition:

> **E.**     This Coverage Part applies only if on or before the effective date of this coverage, the "insured" had no knowledge of any circumstances involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, which could reasonably be expected to result in a

**COMPLAINT AND DEMAND FOR JURY TRIAL – 12**

"claim" made against you, any "insured," or any "subsidiary" under this Coverage Part. ["Condition E"]

Form SS 09 01 10 08, pp. 1.

79. April 1, 2012, was the effective date for the EPLI Coverage Form under the Policy for the original $10,000 coverage limit, and April 20, 2012, was the effective date for the modified coverage limit. Form SS 09 58 10 08, Form SS 00 02 12 06, Spectrum Policy Declarations.

80. Women's Clinic and its agents were aware of the facts and circumstances giving rise to the Underlying Lawsuit prior to April 1, 2012, precluding coverage under Condition E.

81. Women's Clinic and its agents were aware of the facts and circumstances giving rise to the Underlying Lawsuit prior to April 20, 2012, precluding coverage under Condition E.

82. Because the Underlying Action is based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving alleged incidents, act, and omissions, of which Women's Clinic was aware and allegedly participated in prior to April 1, 2012, in the event this Court determines that the Policy is not void ab initio, Sentinel is entitled to a declaration that Women's Clinic is not entitled to coverage under the Policy for claims made in the Underlying Action pursuant to Condition E.

## COUNT III – BREACH OF CONTRACT (INSURE IT ALL)

83. The allegations of ¶¶ 1-82 are incorporated herein by reference as if set forth in full.

84. Insurance Services of San Francisco, Inc. d/b/a ISU Insurance Services of San Francisco ("ISU Insurance") is a party to an Agency Agreement with Hartford Fire Insurance Company, the parent company of Sentinel ("Agency Agreement").

85. Hartford Fire Insurance Company ("Hartford") is the parent company of Sentinel.

**COMPLAINT AND DEMAND FOR JURY TRIAL – 13**

86.     Insure It All was, at all relevant times,  a sub-agent of ISU Insurance.

87.     Insure It All is named as an identified sub-agent of ISU Insurance in the Agency Agreement in an amendatory endorsement to the Agency Agreement.

88.     As a designated subagent of ISU, Insure It All can only broker Hartford/Sentinel insurance products under the terms and conditions of the Agency Agreement.

89.     The Agency Agreement was amended December 22, 2011, by the "Hartford Financial Products Amendment to Agency Agreement" ("Amendment").

90.     Hartford Financial Products is a business division of Hartford, underwriting and adjusting professional liability insurance products.

91.     Under the terms of the Amendment, ISU Insurance and Insure It All's authority to bind policies and related coverage for "Hartford Financial Products and Professional Liability lines of business" was revoked.

92.     Under the terms of the Amendment, ISU Insurance and Insure It All's authority with respect to "Hartford Financial Products and Professional Liability lines of business" was limited to "submi[ssion] of applications and request[ing] quotes for insurance which [Hartford and its subsidiaries] write in your territory."

93.     The Policy at issue in this litigation is a "Professional Liability line of business" designated as a "Hartford Financial Product" under the Agency Agreement and Amendment.

94.     The Agency Agreement and Amendment obligated Insure It All to submit all application information relevant to the risk for which coverage was sought to the Hartford/Sentinel.

95.     Insure It All's failure to disclose information concerning Ms. Weekes' claims from Hartford/Sentinel was a breach of the Agency Agreement and Amendment.

**COMPLAINT AND DEMAND FOR JURY TRIAL – 14**

96.     If Insure It All had submitted information of which it was aware concerning the potential Weekes' claims to Hartford/Sentinel, the Policy in question would not have been issued.

97.     If Insure It All had submitted information of which it was aware concerning the potential Weekes' claims to Hartford/Sentinel, the EPLI coverage limits in the Policy would not have been increased.

98.     Sentinel has been damaged by Insure It All's breach of the Agency Agreement and Amendment in an amount to be proven at trial.

## COUNT IV – BREACH OF FIDUCIARY DUTY (INSURE IT ALL)

99.     The allegations of ¶¶ 1-98 are incorporated herein by reference as if set forth in full.

100.    In its performance of the Agency Agreement and Amendment, Insure It All, its agents, and employees, were given access to sensitive information and submitted information on which Sentinel relied, placing Insure It All, its agents, and employees in a position of trust and confidence with respect to Sentinel.

101.    Insure It All owed a fiduciary duty to Sentinel.

102.    Insure It All breached its fiduciary duty to Sentinel through failure to disclose and concealment of information of which it was aware relevant to the risk insured under the Policy.

103.    As a direct and proximate result of Insure It All's breach of fiduciary duty, Sentinel has been damaged in an amount to be proven at trial.

## COUNT V – NEGLIGENCE (INSURE IT ALL)

104.    The allegations of ¶¶ 1-103 are incorporated herein by reference as if set forth in full.

105.    Insure It All had a duty to act with reasonable care, skill, and diligence in its dealings with Sentinel.

106.    Insure It All breached its duties to Sentinel when it failed to disclose relevant information concerning Women's Clinic's potential EPLI claims to Sentinel.

107.    Insure It All breached its duties to Sentinel when it failed to disclose information to Sentinel that, in the exercise of reasonable care, skill, and diligence, Insure It All should have known was relevant to Sentinel's decision concerning Women's Clinic's request for an EPLI coverage-limit increase.

108.    Insure It All breached its duties to Sentinel by failing to conduct a thorough investigation of all facts and circumstances relevant to Women's Clinic's potential EPLI claims.

109.    Insure It All was negligent in failing to conduct necessary investigations and make required disclosures to Sentinel.

110.    As a direct and proximate result of Insure It All's negligence, Sentinel has been damaged in an amount to be proven at trial.

### COUNT VI – FRAUD (WOMEN'S CLINIC/INSURE IT ALL)

111.    The allegations of ¶¶ 1-110 are incorporated herein by reference as if set forth in full.

112.    In seeking the Policy for Women's Clinic, both Insure It All and Women's Clinic made statements of fact to Sentinel concerning knowledge of risks potentially falling under the Policy.

113.    The statements made by Women's Clinic and Insure It All concerning potential risks under the Policy were false and misleading.

**COMPLAINT AND DEMAND FOR JURY TRIAL – 16**

114.    The false and misleading statements made by Women's Clinic and Insure It All were material to Sentinel's decision to issue the Policy and increase the EPLI coverage limits.

115.    Both Women's Clinic and Insure It All were aware that their statements concerning knowledge of risks potentially falling under the Policy were false.

116.    Women's Clinic and Insure It All made false statements to Sentinel concerning potential risks under the Policy with the intent that Sentinel rely on those statements.

117.    Sentinel was not aware that the statements concerning knowledge of risk potentially falling under the Policy were false.

118.    Sentinel relied on statements made by Women's Clinic and Insure It All concerning knowledge of risks potentially falling under the Policy in determining whether to issue the Policy and modify EPLI coverage limits under the Policy.

119.    Sentinel was justified in relying on statements made by Women's Clinic and Insure It All concerning knowledge of risks potentially falling under the Policy in determining whether to issue the Policy and modify EPLI coverage limits under the Policy.

120.    As a direct and proximate result of statements made by Women's Clinic and Insure It All concerning their knowledge of risks potentially falling under the Policy, Sentinel has been damaged in an amount to be proven at trial.

**V.**
**CLAIM FOR ATTORNEY FEES AND COSTS**

121.    Sentinel has been required to retain the services of Duke Scanlan & Hall, PLLC, to prosecute this action, and has and will continue to incur reasonable attorney fees and costs relative to its prosecution of this action.  Sentinel alleges and hereby makes claim against Defendants for Sentinel's costs and reasonable attorney fees incurred pursuant to the provisions of Idaho Code §§ 10-1210, 12-121, 12-123, 41-1839, Rule 54 of the Federal Rules of Civil

**COMPLAINT AND DEMAND FOR JURY TRIAL – 17**

Procedure, and any other contractual provision, statute, rule, or regulation providing for an award of attorney fees and/or costs in this action.

## VI.
## PRAYER

**WHEREFORE**, Sentinel prays for equitable relief, declaration, and judgment as follows:

1.      A declaration that the Policy is void ab initio;

2.      A judgment rescinding the Policy;

3.      A declaration that Women's Clinic is not entitled to coverage under the Policy for claims asserted in the Underlying Action because it had knowledge of the facts and circumstances of those claims prior to the policy period;

4.      A money judgment against Insure It All for damages resulting from breach of contract, breach of fiduciary, and fraud;

5.      A money judgment against Women's Clinic for damages resulting from fraud;

6.      An award of Sentinel's attorney's fees and costs incurred in this matter; and

7.      Any other relief this Court deems just and equitable.

DATED this 24th day of July, 2013.

DUKE SCANLAN & HALL, PLLC


By_____/s/  Keely E. Duke_____
        Keely E. Duke – Of the Firm
        Kevin A. Griffiths – Of the Firm
        Attorneys for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL – 18**